IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BEKA-LYNN SHIMP,** | : CIVIL ACTION NO. 1:15-CV-1109 |
| Plaintiff | : (Chief Judge Conner) |
| v. | : |
| **WILDCAT, LLC,** | : |
| Defendant | : |

## MEMORANDUM

Before the court is the motion (Doc. 22) of plaintiff Beka-Lynn Shimp ("Shimp") for approval of the settlement agreement by and between Shimp and defendant Wildcat, LLC ("Wildcat"), seeking to resolve Shimp's claims against Wildcat under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Pennsylvania Minimum Wage Act ("PMWA"), 43 PA. STAT. AND CONS. STAT. ANN. § 333.101 *et seq.* The court will grant Shimp's motion.

**I.    Factual Background & Procedural History**

At all times relevant to this matter, Wildcat[1] owned and operated a Uni-Mart convenience store located in Mercersburg, Pennsylvania. (Doc. 1 ¶ 8; Doc. 5 ¶ 8). Shimp worked for Wildcat at the Mercersburg store for the approximate period of December 2013 through July 2014. (Doc. 1 ¶ 9; Doc. 5 ¶ 9). From December 2013 through April 2014, Wildcat paid Shimp an hourly wage of $7.25. (See Doc. 1 ¶ 10; Doc. 5 ¶ 10). Wildcat increased Shimp's hourly wage to $7.41 in approximately April

---

[1] Shimp's complaint originally identified Dunne Manning, Inc., as the defendant. (See Doc. 1). On October 16, 2015, the parties jointly stipulated to substitute Wildcat for Dunne Manning. (See Docs. 12-13).

2014 and to $8.00 in approximately June 2014. (Doc. 1 ¶ 10; Doc. 5 ¶ 10). According to Shimp, her store manager regularly required her to work "off-the-clock." (Doc. 1 ¶ 11). Shimp maintains that, "during many workweeks," she worked more than 70 hours but was paid for less than 40. (Id.)

Shimp commenced this action by filing a two-count complaint on June 8, 2015, asserting claims for violation of the FLSA and PMWA. (Doc. 1). Wildcat filed its answer (Doc. 5) on August 4, 2015, denying each of Shimp's claims. During the ensuing period of discovery, Wildcat provided Shimp's payroll and timekeeping data to her counsel, and Shimp's counsel performed a damages assessment. (See Doc. 23 at 2). Based upon Shimp's estimate that she worked "off-the-clock" for 31 hours each week from January through July 2014, Shimp's counsel calculated unpaid wages of approximately $8,427.39. (See id.)

The parties agreed to participate in mediation before proceeding to trial. (See Docs. 11, 14). On March 10, 2016, the assigned mediator reported to the court that the parties had reached an amicable resolution of their dispute. (See Doc. 20). Shortly thereafter, Shimp filed the instant motion (Doc. 22) for judicial approval of the parties' settlement.

## II. Legal Standard

Congress enacted the FLSA for the purpose of "protect[ing] all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a). The statute was designed to ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work and would be protected from the evil

of overwork as well as underpay." Barrentine, 450 U.S. at 739 (internal citations and quotations omitted). To safeguard employee rights made mandatory by statute, a majority of courts have held that *bona fide* FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit. See, e.g., Lynn's Food Stores, Inc. v. U.S. *ex rel.* U.S. Dep't of Labor, 679 F.2d 1350, 1354-55 (11th Cir. 1982); Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015); Copeland v. ABB, Inc., 521 F.3d 1010, 1014 (8th Cir. 2008); O'Connor v. United States, 308 F.3d 1233, 1243-44 (Fed. Cir. 2002); Walton v. United Consumers Club, Inc., 786 F.2d 303, 305-07 (7th Cir. 1986); Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1237-38 (M.D. Fla. 2010); Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 717-18 (E.D. La. 2008).

The Third Circuit has not addressed whether FLSA actions claiming unpaid wages may be settled privately prior to obtaining judicial approval. Absent such guidance, district courts within the Third Circuit have routinely adopted the majority position and have required judicial approval as a precondition to amicable resolution of claims. See, e.g., McGee v. Ann's Choice, No. 12-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014); Brown v. TrueBlue, Inc., No. 1:10-CV-514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013); Deitz v. Budget Renovations & Roofing, Inc., No. 4:12-CV-718, 2013 WL 2338496 (M.D. Pa. May 29, 2013); Altenbach v. Lube Ctr., No. 1:08-CV-2178, 2013 WL 74251 (M.D. Pa. Jan. 4, 2013); Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464 (E.D. Pa. 2012); Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012); Morales v. PepsiCo, Inc., No. 11-

6275, 2012 WL 870752 (D.N.J. Mar. 14, 2012). Courts typically employ the considerations set forth by the Eleventh Circuit in Lynn's Food Stores, 679 F.2d 1350, when evaluating proposed FLSA settlement agreements. See, e.g., McGee, 2014 WL 2514582; Brown, 2013 WL 5408575; Deitz, 2013 WL 2338496; Altenbach, 2013 WL 74251; Cuttic, 868 F. Supp. 2d 464; Brumley, 2012 WL 1019337; Morales, 2012 WL 870752.

Under Lynn's Food Stores, a proposed compromise may satisfy judicial review if it is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." 679 F.2d at 1355. When a reviewing court is satisfied that the agreement in fact resolves a *bona fide* dispute, it proceeds in two phases: first, the court assesses whether the parties' agreement is fair and reasonable to the plaintiff employee; second, it determines whether the settlement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace. Altenbach, 2013 WL 74251, at *1; see McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *1; Dees, 706 F. Supp. 2d at 1241.

### III. Discussion

The court will consider *seriatim* the terms of the proposed settlement agreement, the nature of the parties' dispute, and the fairness and reasonableness of the compromise as to Shimp and as measured against the intent of the FLSA. See Lynn's Food Stores, 679 F.2d at 1355.

#### A. Terms of Proposed Agreement

Under the terms of the proposed settlement agreement, Wildcat agrees to pay $11,250.00 to resolve Shimp's claims. (See Doc. 22 at 2). Of the total settlement

4

amount, Shimp will receive $7,037.50 and her counsel will receive $4,212.50 for attorney's fees and expenses. (Id.) In exchange for payment thereunder, the agreement contains the following release provisions:

> 5. Release of Claims.
>
> (a) Definition of Claims. As used in paragraph 5(b), "Claims" "includes without limitation actions, causes of action, claims, suits, complaints, demands, rights, damages, losses, accounts, judgments, wages, commissions, severance, executions, debts, obligations, rights of contribution and indemnification, attorneys' fees, costs and all other liabilities of any kind or description whatsoever, either in law or equity, whether known or unknown, suspected or unsuspected, concerning Plaintiff's allegations in the Action that she was not paid for all hours worked and when appropriate overtime premium compensation, including, but not limited to, claims arising under Fair Labor Standards and Pennsylvania Minimum Wage Act. Notwithstanding anything contained herein to the contrary, "Claims" does not refer to any vested or accrued benefits to which Plaintiff may be entitled under any employee benefit plan, and this Agreement has no effect on those benefits. Nothing herein shall impact Plaintiff's existing worker's compensation claim against Defendant, which is . . . expressly excluded from the scope of this Agreement and from the release of claims described herein.
>
> (b) Release of Claims Against Defendant. In consideration for the promises made herein, Plaintiff, on behalf of her executors, administrators, agents, beneficiaries and assigns, hereby waives, releases, and forever discharge[s] Defendant, as defined in Section 1, from any and all Claims, as defined in Section 5(a), that Plaintiff now has against Defendant, for or by reason of any cause, matter or thing from the beginning of time up to and including the date this Agreement is executed.

(Id. at 3). The agreement contains standard non-disparagement and no admission of liability settlement terms, in addition to a Pennsylvania choice-of-law provision and integration and severability clauses. (Id. at 2-4).

B.   ***Bona Fide* Dispute**

The court first addresses the threshold question of whether the parties' agreement resolves a *bona fide* dispute therebetween. Shimp maintains that Wildcat willfully violated federal and state law by failing to compensate her for unreported hours worked between January and July 2014. (See Doc. 1 ¶¶ 11-12; Doc. 23 at 5). Wildcat continues to deny these allegations, disputing both whether Shimp ever worked "off-the-clock" and her back pay calculation. (See Doc. 5 ¶¶ 11-12; Doc. 23 at 5-6). The parties engaged in limited discovery prior to participating in mediation to explore the merits of their respective claims and defenses. (See Doc. 11).

A *bona fide* dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial. See Lynn's Food Stores, 679 F.2d at 1354; Deitz, 2013 WL 2338496, at *3 (citing Collins, 568 F. Supp. 2d at 719-20). As this court recently observed, a *bona fide* dispute thus involves factual rather than legal doubt. See Deitz, 2013 WL 2338496, at *3 (citing Lignore v. Hosp. of Univ. of Pa., No. 04-5735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007)). Such doubt is manifest *sub judice*. There are genuine questions as to whether Shimp could prove to a jury's satisfaction that she worked the overtime hours alleged and that Wildcat knew of and willfully disregarded its obligation to compensate her for the hours worked. (See Doc. 23 at 5-6). The court concludes that the proposed agreement resolves a *bona fide* dispute between the parties.

### C. Fair and Reasonable Settlement

The court next determines whether the settlement agreement proposed by the parties represents a fair and reasonable compromise of Shimp's claims. In undertaking this analysis, district courts within the Third Circuit have considered the factors set forth in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), which established evaluative criteria for measuring the fairness of proposed class action settlements. See, e.g., McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *2; Deitz, 2013 WL 2338496, at *5-8; Altenbach, 2013 WL 74251, at *2; Brumley, 2012 WL 1019337, at *4-5. Girsh directs courts to examine the following nine factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 156-57.

Applying the appropriate Girsh factors, the court is satisfied that the parties' agreement reaches a fair and reasonable compromise. The cost of litigating this action has already outpaced the monetary value of Shimp's claims. (See Doc. 22-1). The parties participated in limited fact discovery before mediation, offering both sides an appreciation of the merits of the case, and the fate of Shimp's claims at trial is less than certain. Most notably, however, the settlement compensates Shimp for

7

approximately 26.5 hours worked per week during the relevant period, representing recovery of more than 85 percent of the unpaid wages sought in Shimp's complaint. (See Doc. 23 at 6). The court has little difficulty concluding that the settlement represents a fair and reasonable resolution of Shimp's claims.

### D.     Furtherance of the FLSA

The court must also determine whether the proposed settlement furthers or frustrates implementation of the FLSA in the workplace. See McGee, 2014 WL 2514582, at *2; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *1; Dees, 706 F. Supp. 2d at 1241. A principal objective of the FLSA is to combat "inequalities in bargaining power between employers and employees," Lynn's Food Stores, 679 F.2d at 1352 (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945)), and courts must bear this principle in mind when assessing whether a proposed settlement agreement "impermissibly frustrates" the FLSA. Altenbach, 2013 WL 74251, at *1. In making this assessment, courts consider, *inter alia*, the breadth of any release of claims, see, e.g., Bettger v. Crossmark, Inc., No. 1:13-CV-2030, 2015 WL 279754, at *8-10 (M.D. Pa. Jan. 22, 2015); Dees, 706 F. Supp. 2d at 1243, and the scope of any confidentiality provisions, see, e.g., McGee, 2014 WL 2514582, at *3; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *2-3.

The court finds that the proposed settlement agreement properly furthers the purpose of the FLSA. The agreement contains no confidentiality clause, only a non-disparagement provision, (see Doc. 22 at 3), and thus does not impermissibly

restrict the public's access to or knowledge of the disputed FLSA violation.  See, e.g., McGee, 2014 WL 2514582, at *3; Brown, 2013 WL 5408575, at *3; Altenbach, 2013 WL 74251, at *2-3.  Likewise, the claims release provision is narrowly tailored and entirely reasonable.  Shimp releases only those claims pertaining to her unpaid wage allegations.  (See Doc. 22 at 3).  The agreement does not contain the type of prospective or overbroad waiver previously rejected by reviewing courts.  Cf. Bettger, 2015 WL 279754, at *8-10; Dees, 706 F. Supp. 2d at 1243.  Indeed, in the interests of clarity and caution, the release provision expressly exempts Shimp's pending workers' compensation claim from its scope.  (See Doc. 22 at 3).  The court finds that the instant settlement agreement is consistent with the purposes of the FLSA.

### IV. Conclusion

The court will grant Shimp's motion (Doc. 22) and approve the parties' proposed settlement agreement.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       April 20, 2016